IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| URIEL ROJAS VARGAS,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>BONDI, *et al.*,<br>　　　　　　　Defendant. | §<br>§<br>§<br>§<br>§   No. 1:25-cv-01699-DAE<br>§<br>§<br>§<br>§ |

ORDER

Before the Court is Petitioner Uriel Rojas Vargas's Motion for Temporary Restraining Order (Dkt. # 2). Respondents filed a brief in opposition on October 27, 2025. The Court held a hearing in this matter on October 30, 2025, at 10:30am. After careful consideration of the parties' briefs and the relevant law, the Court **GRANTS** Defendant's Motion for Temporary Restraining Order (Dkt. # 2) for the reasons below.

BACKGROUND

Petitioner Rojas Vargas is a Mexican Citizen who entered the country without inspection (EWI) and has resided in the United States since February 23, 2018. (Dkt. # 1 at 2.) He has substantial family ties to the United States: he is married to a pregnant U.S. citizen and has seven U.S. citizen children. (Id.) In his seven years here, he has maintained stable employment and has no criminal

1

convictions.  (Id.)  Petitioner's spouse filed an I-130 Petition for Alien Relative when he was detained, which is currently pending before the U.S. Citizenship and Immigration Services (USCIS).  (Dkt. #1 at 13.)

On August 6, 2025, Petitioner was arrested in Travis County, Texas on charges that were later rejected by the prosecution for insufficient evidence.  (Dkt. # 1 at 11.)  While in custody and after the charges were rejected, Petitioner was picked up by Immigration and Customs Enforcement (ICE) pursuant to an arrest warrant.  (Id. at 12.)  Petitioner was taken to the T. Don Hutton Detention Center in Taylor, Texas on September 23, 2025, and has remained there ever since.  (Id.)

During that time, Petitioner has not applied for a bond redetermination hearing; he says he is ineligible to request one in light of the Board of Immigration Appeals' (BIA) September 5, 2025 decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).  (Dkt. # 1 at 12.)  Petitioner asserts he has no administrative remedies available to him.  (Dkt. # 1 at 13.)  Since Respondents have not provided Petitioner with an individualized bond hearing, Petitioner is being held indefinitely pending the adjudication of his immigration status.  On October 22, 2025, Petitioner initiated this habeas action and moved for a TRO to enjoin his detention or order a bond redetermination hearing before an Immigration Judge (IJ).  (Dkt. ## 1, 2.)  The parties disagree over whether this indefinite detention is a lawful application of 8 U.S.C. § 1225.

LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure provides that a district court:

may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b).

The factors that govern an application for a temporary restraining order are the same as those that govern a request for preliminary injunction. Hill v. Green County Sch. Dist., 848 F. Supp. 697, 703 (S.D. Miss. 1994) (citing Canal Auth. v. Callaway, 489 F.2d 567 (5th Cir. 1974)). Under well-settled Fifth Circuit precedent, the movant must show: (1) there is a substantial likelihood that the plaintiff will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury to the plaintiff outweighs whatever damage the proposed injunctive relief would cause the defendant; and (4) the granting of the injunction is not adverse to the public interest.  Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir. 2009) (quoting Canal Auth., 489 F.2d at 572).  To determine the likelihood of success on the merits, the Court looks to the standards provided by the substantive law. See Mississippi

Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 622 (5th Cir. 1985). The substantive prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief are not altered by Rule 65 and depend on traditional principles of equity jurisdiction. Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 318–19 (1999).

## DISCUSSION

**I.     This Court has Jurisdiction to Decide the Issues in this Case.**

Respondents argue that the Court lacks jurisdiction to decide this case because 8 U.S.C. § 1252(g) and 8 U.S.C. § 1225(b)(9) bar district court review of decisions to commence removal proceedings and any decision regarding the admission of a noncitizen. (Dkt. # 6 at 7-8.) This Court need not repeat well-reasoned explanations from other courts asserting jurisdiction over similar claims, but rather states its agreement that neither 8 U.S.C. § 1252(g) nor 8 U.S.C. § 225(b)(4) bar this court's review of the relevant issues in this case. See, e.g., Vieira v. De Anda-Ybarra, EP-25-CV-00432-DB, 2025 WL 2937880, at *2-4 (W.D. Tex. Oct. 16, 2025) (finding a case "falls squarely outside" the jurisdictional bar of either provision where Petitioner was only "challenging whether certain INA provisions require his detention without a bond hearing. . ."). Satisfied that Petitioner does not challenge the decision to commence removal proceedings and finding Jennings instructive as to the jurisdictional question, this Court asserts its

jurisdiction over this case. See Jennings v. Rodriguez, 583 U.S. 281, 293 (2018) ("We are required in this case to decide 'questions of law,' specifically, whether . . . certain statutory provisions require detention without a bond hearing.")

**II.     Petitioner is Likely to Succeed on the Merits.**

Petitioner claims that his indefinite detention without bond violates the Immigration and Nationality Act ("INA"), related bond regulations, and his right to due process. (Dkt. # 2 at 3-4.) The Court finds that Petitioner is likely to succeed at least on the merits of his claim that his detention without bond violates the INA. The Court need not reach the merits of his other claims at this time.

Although Respondents would have this Court dispose of the TRO without reaching the question of the governing detention statute in this case, the Court finds that this is a critical threshold question. (See Dkt. # 6 at 1.) A determination of the relevant detention statute is crucial because only one of the two statutes in dispute permits detention without bond.

> Under 8 U.S.C. § 1225(b)(2), otherwise referred to as the "mandatory detention statute," a noncitizen "who is an applicant for admission" shall be detained for a removal proceeding "if the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). In contrast, under 8 U.S.C. § 1226, the "discretionary detention statute," a noncitizen subject to detention is entitled to procedural protections that are not afford under the mandatory detention statute, such as the right to a bond redetermination hearing in front of an Immigration Judge and a right to appeal any custody redetermination. See C.F.R. § 236.1 (2025).

5

Buenrostro-Mendez v. Bondi, Case No. H-25-3726, 2025 WL 2886346, at *2 (S.D. Tex. Oct. 7, 2025) (quoting Chiliquinga Yumbillo v. Stamper, No. 2:25-cv-479, 2025 WL 2783642, at *2 (D. Me. Sep. 30, 2025) (internal quotations omitted). Thus, the detention statute under which Petitioner is held determines his eligibility for the bond redetermination hearing he requests.

In his Motion for a TRO, Petitioner states he is seeking relief from detention under 8 U.S.C. § 1225(b). (Dkt. # 2 at 6.) Petitioner argues he is unlawfully detained under this statute because § 1226(a) rather than § 1225(b)(2)(A) applies to long-term EWIs like himself. (Dkt. # 2 at 3.) Respondents focus most of their briefing on mandatory detention under § 1225(b) but also assert that "pre-removal detention is authorized by statute . . . regardless of whether the appropriate detention authority is § 1226(a) or § 1225(b)." (Dkt. # 6 at 2.) At issue, however, is *not* whether detention is authorized at all; rather, whether indefinite detention without bond is authorized in this case.

This threshold question is a matter of statutory interpretation of two provisions of the INA: § 1225(b)(2) and § 1226(a). Respondents' argument relates to the definition of an "applicant for admission." (Dkt. # 6 at 5-6). The INA defines an "applicant for admission" in § 1225(a)(1) as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)" Respondents would construe

6

this term expansively to include Petitioner and those in similar positions who entered the country without inspection but have resided here for years. (Dkt. # 6 at 5.)

However, in the mandatory detention provision in § 1225(b)(2)(A), the statute further references "an applicant for admission" who is "seeking admission." In the hearing on this issue, Respondents dismissed this additional term, "seeking admission," as synonymous with "applicant for admission," arguing that the actions of seeking and applying are essentially the same. However, other judges, even those in our district, have seen a distinction here, finding the "'seeking admission' requirement to mean a noncitizen present in the United States without admission *who has recently arrived and is actively seeking admission*, not a noncitizen who has been residing in the country for years." Guerrero v. Noem et al., 1:25-CV-1334-RP (W.D. Tex. Oct. 27, 2025). This reading is consistent with the rule against surplusage, which gives effect to "every clause and word of a statute." See id. (citing Martinez v. Hyde, No. CV-25-11613-BEM, 2025 WL 2084238, at *4 (D. Mass. July 24, 2025); Duncan v. Walker, 533 U.S. 167, 174 (2001); Sanderson Farms, Inc. v. Occupation Safety & Health Rev. Comm'n, 964 F.3d 418, 425 (5th Cir. 2020).

Failing to acknowledge this distinction would render § 1226 insignificant at best and meaningless at worst. Other courts have theorized that under this

interpretation, § 1226 would still apply to noncitizens admitted on visas who overstay their terms. Lopez Benitez v. Francis, No. CV-25-11613-BEM, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025). However, "there is no indication that Congress intended § 1226 to be limited only to visa overstays. And there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach." Id. at *8. Such a reading would make the use of § 1226 exceedingly rare and runs contrary to decades of DHS practice. Thus, this Court declines to adopt Respondents' broad reading of § 1225.

Although the Supreme Court ultimately answered a different question than the one at bar here, they explained in Jennings that "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). Petitioner Rojas Vargas is already here; he has been present in the United States continuously for over seven years. His presence indicates he is not "seeking admission" under § 1225(b), but rather wishes to stay in the country under § 1226(a).

A recent decision in this District found further support for this interpretation given the legislative history and recent amendments to the Illegal Immigration

8

Reform and Immigrant Responsibility Act ("IIRIRA").  See Guerrero v. Noem et al., 1:25-CV-1334-RP, at *5-7 (W.D. Tex. Oct. 27, 2025).  § 1226 was amended earlier this year by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), requiring mandatory detention for noncitizens charged with or convicted of certain crimes.  This Court concurs with the opinion in Guerrero that "[i]f all noncitizens charged as inadmissible due to entry without inspection were already subject to mandatory detention under § 1225(b)(2), it would make no sense for Congress to have amended the statute to require mandatory detention for specific subcategories of those individuals."  See Guerrero v. Noem et al., 1:25-CV-1334-RP, at *5-7 (W.D. Tex. Oct. 27, 2025).

Although Respondents appear to argue that Congress intended to mandate detention for noncitizens under § 1225 and § 1226, no plausible reading of § 1226(a) would lead this Court to conclude that the statute authorizes indefinite detention without the opportunity to be heard in a bond redetermination hearing.  As evidenced by the recent nation-wide flood of district court decisions to the same effect, "this new, expansive interpretation of mandatory detention under the INA is either incorrect or likely incorrect."  Lopez-Arevelo v. Ripa, 25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sep. 22, 2025); Pizzaro Reyes v. Raycraft, 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sep. 9, 2025); Belsai D.S. v. Bondi, No. 25-CV-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025) (calling the decisions a

"chorus" of courts rejecting respondents' interpretation of § 1225(b)(2)); Roman v. Noem, 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sep. 23, 2025). The plentiful district court decisions granting relief to petitioners in similar positions further evidence Petitioner Rojas Vargas's likelihood of success in his action. Given the language and amendment history of the INA does not comport with Respondents' arguments to the contrary, this Court finds there is a substantial likelihood that Petitioner is owed a bond hearing and will succeed on the merits of his habeas petition.

### III. The Remaining Factors Support Relief.

As to the remaining Canal Authority factors, this Court finds they weigh in Petitioner's favor. Respondent argues that "Petitioner has provided no basis for this Court to determine that his continued detention . . . will cause him irreparable harm." (Dkt. # 6 at 10.) However, unlawful detention in an immigration context is inherently a substantial threat of irreparable injury. See Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (finding that plaintiffs "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time.") To the extent Respondents argue there is a benefit to Petitioner remaining in custody because his removal proceedings will advance faster than if he were not detained, the Court adamantly rejects this line of

reasoning.  (Dkt. # 6 at 10-11.)  Petitioner suffers a loss of liberty while he is detained and has suffered further harm due to separation from his spouse and children.

Meanwhile, the predominant countervailing interest asserted by Respondents is the public interest in enforcement of the country's immigration laws.  (Dkt. # 6 at 10.)  "But the public also has an interest in the *government* following those laws.  This includes providing bond when the law requires it."  Hernandez Ramiro v. Bondi et al., 5:25-CV-01207-XR (W.D. Tex. Oct. 15, 2025) (citing Kostak v. Trump, No. 3:25-CV-1093, 2025 WL 2472136, at *2 (W.D. La. Aug. 27, 2025)).

In balancing the remaining factors, the Court finds that there is a substantial threat of irreparable harm that outweighs any damage to Respondents, and that granting the TRO would not be adverse to the public interest.  Respondent does not appear to allege that Petitioner would be a danger to the community, and nothing in Petitioner's clean record suggests that releasing him on bond would be contrary to the public's interest in safety.  Therefore, the equities weigh in favor of granting relief to Petitioner, and a temporary restraining order is appropriate in this case.

### IV.     A Bond Hearing is Necessary to Preserve the Status Quo

In granting temporary restraining orders, courts must only grant such relief as necessary to maintain the status quo.  Norman Bridge Drug Co. v. Banner, 529 F.2d 822 (5th Cir. 1976) ("[T]he office of a temporary restraining order is to

preserve, for a very brief time, the status quo, so as to avoid irreparable injury pending a hearing on the issuance of a preliminary injunction.")  The status quo is the "last uncontested status."  United States v. F.D.I.C., 881 F.2d 207, 210 (5th Cir. 2010).

Here, Petitioner requests immediate release or, in the alternative, an order requiring the Executive Office for Immigration Review ("EOIR") to hold a fair bond redetermination hearing and enjoin further detention under § 1225(b).  (Dkt. # 2 at 6.)  Regardless of whether Petitioner is detained under § 1225 or § 1226, Respondents correctly point out that the government may detain him—under the mandatory detention provision in § 1225 or under the discretionary provision in § 1226.  However, since this Court has found that Petitioner is being held pursuant to § 1226, Respondents may not detain him without providing a bond hearing.  See 8 U.S.C. § 1226(a)(2).

## CONCLUSION

For the reasons above, Defendant Uriel Rojas Vargas's Motion for Temporary Restraining Order is **GRANTED**.  (Dkt. # 2.)  Respondents are **ORDERED TO PROVIDE** Petitioner with a bond hearing before an immigration judge **no later than November 19, 2025,** at which the Government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence based on dangerousness or flight risk.  If Respondents are unable to

provide this hearing by November 19, 2025, Respondents shall release Petitioner from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that the parties **SHALL FILE** a status report on the status of Petitioner's bond hearing **no later than November 20, 2025**. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

To the extent a bond may be required for this relief pursuant to Federal Rule of Civil Procedure 65(c), **IT IS FINALLY ORDERED** that requirement is waived. See, e.g., Lopez-Arevelo v. Ripa, EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sep. 22, 2025).

Dated: November 5, 2025

_____
David Alan Ezra
Senior United States District Judge